IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL J. PAVLOCK,

                    Petitioner,

v.                          //    CIVIL ACTION NO. 1:14CV72
                                  CRIMINAL ACTION NO. 1:10CR07-1
                                        (Judge Keeley)

UNITED STATES OF AMERICA,

                    Respondent.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO
§ 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

On April 21, 2014, the petitioner, Michael J. Pavlock
("Pavlock"), filed a motion pursuant to 28 U.S.C. § 2255 to vacate,
set aside, or correct sentence ("Petition") (Dkt. No. 1). Pavlock
claims he was deprived of his Sixth Amendment right to effective
assistance of appellate counsel (Dkt. Nos. 35-1 at 2; 35-2 at 2).
Pursuant to 28 U.S.C. § 636 and LR PL P 2, the Court referred the
Petition to the Honorable Robert W. Trumble, United States
Magistrate Judge, for initial review. On August 11, 2016,
Magistrate Judge Trumble filed a Report and Recommendation ("R&R"),
recommending that the Petition be denied and dismissed with
prejudice (Dkt. No. 40).

After receiving an extension of time in which to object,
Pavlock filed timely objections to the R&R on September 15, 2016
(Dkt. Nos. 45; 46; 48; 49). Following due consideration of the R&R
and Pavlock's objections, the Court **OVERRULES** the objections (Dkt.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

Nos. 48; 49), **ADOPTS** the R&R (Dkt. No. 40), **DENIES** the Petition, and **DISMISSES** it **WITH PREJUDICE** (Dkt. No. 1).

## I. BACKGROUND

### A.    Conviction, Sentence, and Appeal[1]

On January 5, 2010, a grand jury in the Northern District of West Virginia returned a fifteen count indictment alleging that Pavlock was the architect of a financial scheme dubbed the "1999 Settlement Agreement" (Dkt. Nos. 1; 497 at 245-46). Counts One through Twelve charged wire fraud in violation of 18 U.S.C. §§ 1343 and 2; Counts Thirteen through Fifteen charged false entries in a bankruptcy document in violation of 18 U.S.C. §§ 1519 and 2 (Dkt. No. 1). At the conclusion of an eight-day trial, on December 20, 2010, the jury convicted Pavlock on all counts (Dkt. No. 293).

On August 22, 2011, the Court sentenced Pavlock to 324 months of imprisonment, followed by three years of supervised release (Dkt. No. 434). The lengthy prison term was in part a consequence of the application of two enhancements under the United States Sentencing Guidelines ("U.S.S.G."). The Court applied a two-level enhancement pursuant to U.S.S.G. § 3B1.3 after finding that Pavlock

---

[1] Unless otherwise noted, docket entries in this section refer to Criminal Action No. 1:10cr7-1.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

had abused a position of trust. It also applied an additional two-level enhancement under U.S.S.G. § 3A1.1(b)(1) after finding that the offense involved a vulnerable victim (Dkt. No. 497 at 245-46, 257-58).

After Pavlock appealed (Dkt. No. 446), challenging the sufficiency of the evidence, the Court of Appeals for the Fourth Circuit affirmed his conviction on September 20, 2012. United States v. Pavlock, 494 F. App'x 366 (4th Cir. 2012) (unpublished decision). Following this unsuccessful appeal, Pavlock twice unsuccessfully petitioned the Supreme Court of the United States for a writ of certiorari (Dkt. No. 35 at 2-3).

**B.    § 2255 Petition**

Pavlock's habeas petition, filed on April 21, 2014, asserted 45 grounds for relief (Dkt. No. 1). Thereafter, Magistrate Judge Trumble permitted Pavlock to withdraw or waive various grounds for relief. In order to avoid confusion, Magistrate Judge Trumble also directed Pavlock to re-file his Petition and specifically identify the grounds for relief that he intended to pursue (Dkt. No. 29). Pavlock did so on August 9, 2016, refining his Petition to assert only two grounds for relief, each of which alleged ineffective assistance of his counsel on direct appeal (Dkt. No. 35).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

Pavlock claims that his appellate counsel failed to challenge the Court's application of the "position of trust" and "vulnerable victim" enhancements under the guidelines (Dkt. Nos. 35-1 at 2; 35-2 at 2), and seeks a "[n]ew appeal, new trial, [and] remand for resentencing" (Dkt. No. 35 at 13).

**C.    Report and Recommendation**

The R&R recommended that the Court deny the Petition (Dkt. No. 40 at 10). Magistrate Judge Trumble reviewed the findings made at Pavlock's sentencing hearing and concluded the Court had properly applied the sentencing enhancements at issue when it increased Pavlock's guideline range. Id. at 6, 8. He therefore concluded that Pavlock "cannot establish that his counsel was ineffective for failing to raise a meritless argument." Id. at 8-9.

## II. STANDARDS OF REVIEW

**A.    Magistrate Judge's R&R**

When reviewing a magistrate judge's R&R made pursuant to 28 U.S.C. § 636, the Court must review de novo only the portions of the R&R to which an objection is timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations to which the prisoner does not object." Dellacirprete v. Gutierrez, 479 F.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold those portions of a recommendation to which no objection has been made unless they are "clearly erroneous." <u>See</u> <u>Diamond v. Colonial Life & Accident Ins. Co.</u>, 416 F.3d 310, 315 (4th Cir. 2005).

**B.    <u>Pro Se</u> Pleadings**

The Court must liberally construe <u>pro se</u> pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (4th Cir. 1978). A <u>pro se</u> petition is subject to dismissal, however, if the Court cannot reasonably read the pleadings to state a valid claim on which the plaintiff could prevail. <u>Barnett v. Hargett</u>, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the petitioner's legal arguments for him, nor should it "conjure up questions never squarely presented." <u>Beaudett v. City of Hampton</u>, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. APPLICABLE LAW

Under 28 U.S.C. § 2255(a), a prisoner may move his sentencing court "to vacate, set aside or correct" a sentence if he claims it "was imposed in violation of the Constitution or laws of the United States." A prisoner's sentence violates the Constitution if he was deprived of his Sixth Amendment right to the effective assistance

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

of appellate counsel. See Richardson v. Branker, 668 F.3d 128, 139 n.10 (4th Cir. 2012). In Strickland v. Washington, the Supreme Court of the United States articulated the now-familiar two-prong test for assessing the assistance of counsel. 466 U.S. 668 (1984). In order to establish a violation of his Sixth Amendment rights, a defendant must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.

The "performance prong" requires establishing that "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. There is a "strong presumption" that the conduct at issue is reasonable on the "wide range of reasonable professional assistance." Id. at 689. Appellate counsel's performance is deficient, however, when he fails to raise issues on appeal that are clearly stronger than those actually asserted. See Smith v. Robbins, 528 U.S. 259, 288 (2000).

Under the "prejudice prong," the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. When the defendant claims ineffective assistance of appellate counsel, he must demonstrate a

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

reasonable probability that he would have prevailed on direct appeal had his counsel provided objectively reasonable representation. <u>United States v. Rangel</u>, 781 F.3d 736, 745 (4th Cir. 2015) (citing <u>Smith</u>, 528 U.S. at 285-86).

The Court is free to bypass analysis of the performance prong if it considers the prejudice prong dispositive. <u>See</u> <u>Strickland</u>, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").[2] In regard to guideline calculations, the Fourth Circuit reviews legal conclusions <u>de novo</u> and factual findings for clear error. <u>United States v. McKenzie-Gude</u>, 671 F.3d 452, 463 (4th Cir. 2011).

## IV. DISCUSSION

The Court reviews Pavlock's specific objections to the R&R's findings <u>de novo</u>. <u>See</u> 28 U.S.C. § 636(b)(1)(C). Following such review, including the transcripts from Pavlock's trial and sentencing, the Court agrees with the magistrate judge that, even if Pavlock has identified stronger claims that his appellate counsel should have presented, those claims did not have a

---

[2] Pavlock's objection that the R&R failed to properly analyze the performance prong is thus without merit (Dkt. No. 49 at 1).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

reasonable probability of success, and he has not been prejudiced within the meaning of the test in <u>Strickland</u>. Pavlock's claims for ineffective assistance of counsel therefore fail. <u>See</u> <u>Strickland</u>, 466 U.S. at 694.

A.    **"Position of Trust" Enhancement**

Magistrate Judge Trumble concluded that Pavlock's conduct satisfied the requirements for imposition of a two-level enhancement under U.S.S.G. § 3B1.3 for abusing a position of trust (Dkt. No. 40 at 7-8). Pavlock objects that he merely "fulfilled the position of a mediator," and that the R&R improperly relied on <u>United States v. Bollin</u>, 264 F.3d 391 (4th Cir. 2001) (Dkt. No. 49 at 2). After reviewing the record, however, it is clear that application of the enhancement was supported by the evidence and Pavlock had no reasonable probability of successfully appealing on this issue. <u>See</u> <u>Rangel</u>, 781 F.3d at 745.

U.S.S.G. § 3B1.3 provides for a two-level enhancement "[i]f the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense." Such a position of trust is "characterized by professional or managerial discretion (i.e.,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

substantial discretionary judgment that is ordinarily given considerable deference)." U.S.S.G. § 3B1.3, Application Note 1.

"The sometimes difficult inquiry into what constitutes a 'position of trust' . . . 'must focus on the relationship between the defendant and the victim from the perspective of the victim.'" United States v. Ebersole, 411 F.3d 517, 536 (4th Cir. 2005) (quoting United States v. Caplinger, 339 F.3d 226, 236 (4th Cir. 2003)). Importantly, in the case of fraud, "where every defendant will have gained the confidence and trust of the victim," something additional must justify the enhancement. Id. (citing Caplinger, 339 F.3d at 236-37).

"[A]pplication of the enhancement requires more than a mere showing that the victim had confidence in the defendant. Something more akin to a fiduciary function is required." Id. (quoting Caplinger, 339 F.3d at 237). "A sentencing court must carefully distinguish between those arms-length commercial relationships where trust is created by the defendant's personality or the victim's credulity and those 'where a fiduciary or personal relationship exists with [the victim] and the defendant takes advantage of the relationship to perpetrate or conceal the offense." Caplinger, 339 F.3d at 237. A key consideration is

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

"whether the defendant has broad discretion to act on behalf of the victim and the victim believes the defendant will act in the victim's best interest." <u>Bollin</u>, 264 F.3d at 416 (quoting <u>United States v. Davuluri</u>, 239 F.3d 902, 909 (7th Cir. 2001)).

In <u>Ebersole</u>, the case on which Pavlock relies to support his argument, the defendant was the president and director of Detector Dogs Against Drugs and Explosives, Inc. ("Detector Dogs"), a business that trained dogs and handlers to find drugs and explosives. 411 F.3d at 520. Following the terrorist attacks on September 11, 2001, Detector Dogs contracted with a number of federal agencies to provide explosive ordnance detection services. Both the dogs and handlers, however, lacked proper training, knowledge, and experience. <u>Id.</u> at 521.

After several federal agencies terminated contracts with Detector Dogs, the government charged the defendant with multiple counts of wire fraud and presenting false claims to the government. <u>Id.</u> at 523. Ultimately, a jury convicted the defendant on all counts. <u>Id.</u> at 524. At sentencing, the district court applied the "position of trust" enhancement. <u>Id.</u> at 535. The Fourth Circuit vacated the defendant's sentence on the basis that the "arms-length

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

commercial relationship" on which the district court had relied could not support the enhancement. Id. at 536.

The circumstances in Pavlock's case are clearly distinguishable, and simply cannot be characterized as "arms-length." At sentencing, the Court summarized the relevant evidence as follows:

> [Pavlock] had been granted unfettered discretion over the monies and assets entrusted to him by the so-called investors, the members of the 1999 Settlement Agreement. He was the mastermind of that agreement. He was more culpable than any of his associates involved in that agreement. He persuaded numerous persons to lend him money and to work for him through using the illusion that he had legitimate business activities and financial success.
>
>        . . . [T]he abuse of the position of trust was an integral component of his commission of the offense here and also his concealment of the offense. [Three witnesses] testified he was the only one who understood the agreement and who could resolve their disputes through the agreement and he convinced them, as part of his scheme, that they could earn profitable returns on their investments by entrusting the money to Mr. Pavlock. . . . He convinced the members of the 1999 Settlement Agreement that they just couldn't understand the complexity of the scheme and that he alone could solve their problems . . . .
>
>        . . . Pavlock was the only one in charge of the complex scheme. As a part of that scheme he made bold declarations and statements regarding business activity which could never be verified or overseen by anybody because he had all the information, to the extent it even existed. So he gained the trust of his victims, including

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

> "investors" in his enterprises and even his own
> employees.

(Crim. No. 1:10cr7-1, Dkt. No. 497 at 245-46).

This factual summary was drawn from witness testimony at trial. For example, one party to the Settlement Agreement, Robert Konchesky ("Mr. Konchesky"), testified that there was no way he could know how much or in what manner Pavlock spent money in connection with the agreement (Crim. No. 1:10cr7-1, Dkt. No. 347 at 14). Nonetheless, Mr. Konchesky trusted Pavlock and invested money at Pavlock's direction because he trusted that Pavlock would make good business decisions. Id. at 10, 29. He gave Pavlock sole discretion over how the money was to be spent on businesses related to the Settlement Agreement, and trusted him to spend it in furtherance of the agreement (Crim. No. 1:10cr7-1, Dkt. No. 346 at 288, 293).

Another party to the agreement, Spencer Graham, testified that Pavlock had "intense knowledge of what [was] going on with all these different organizations . . . and the stake holders in the Settlement Agreement" (Crim. No. 1:10cr7-1, Dkt. No. 349 at 153). Graham could not explain the import of certain documents he had

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

executed, but had "all the confidence in the world that [Pavlock] knew how [it] would work." Id. at 179-80.

Similarly, James Hall, who was involved with the Settlement Agreement and had been identified as a victim in the case, described Pavlock as the "architect" and "head" of the agreement, a task that Pavlock reportedly assumed of his own volition (Crim. No. 1:10cr7-1, Dkt. No. 346 at 188-90, 226). Hall testified that he could not follow the workings of the agreement as it changed over time. Id. at 189.

This evidence more than supported the application of the position of trust enhancement under the Guidelines. Although Pavlock characterizes himself as a mere "mediator" (Dkt.No. 49 at 1-2), those involved in the agreement testified that they did not understand the effect of certain documents or how the agreement as a whole fit together, but nonetheless trusted Pavlock to carry out the agreement.[3] United States v. Brack, 651 F.3d 388, 393 (4th Cir.

---

[3] Pavlock also argues that, because he "doesn't have an MBA [or] a license to practice anything" (Dkt. No. 35-2 at 8), and because he never falsely held himself out as a professional, the Court erred in applying the position of trust enhancement (Dkt. No. 49 at 2). Although the record reflects that Pavlock may have, in fact, held himself out as having special knowledge (Crim. No. 1:10cr7-1, Dkt. No. 346 at 205), such a finding is by no means necessary. Rather, the requisite "fiduciary function" exists if "the defendant has broad discretion to act on behalf of the victim

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

2011) (quoting <u>United States v. Akinkoye</u>, 185 F.3d 192, 203 (4th Cir. 1999)) (rejecting "a mechanistic approach to the abuse of trust enhancement that excludes defendants from consideration based on their job titles"). Such testimony established that Pavlock possessed complete "managerial discretion" over the monies and assets of others, and that his decisions were given "considerable deference" by those involved in the agreement. <u>See</u> U.S.S.G. § 3B1.3, Application Note 1.

This "broad discretion to act on behalf of the victim[s]" demonstrates that Pavlock maintained exactly the type of "fiduciary function" contemplated by U.S.S.G. § 3B1.3. <u>Bollin</u>, 264 F.3d at 416. Importantly, it was Pavlock's discretion that significantly facilitated his commission of the offense; because of their lack of understanding, his associates and victims could not easily detect when he handled matters improperly and to their detriment. <u>See</u> <u>Brack</u>, 651 F.3d at 393.

Thus, even had Pavlock's appellate counsel argued that the Court improperly applied the enhancement under U.S.S.G. § 3B1.3,

---

and the victim believes the defendant will act in the victim's best interest." <u>Bollin</u>, 264 F.3d at 416. In <u>Bollin</u>, for instance, the defendant's misrepresentations concerning his skill and experience allowed him to obtain broad discretion. <u>Id.</u> Nonetheless, such broad discretion can be acquired by other means.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

that argument had no reasonable probability of success. Therefore, Pavlock was not prejudiced within the meaning of <u>Strickland</u>, and his claim for ineffective assistance of counsel on this ground fails.

**B.    "Vulnerable Victim" Enhancement**

Magistrate Judge Trumble recommended that Pavlock's conduct satisfied the requirements for imposition of a two-level enhancement under the guidelines because the offense involved a vulnerable victim (Dkt. No. 40 at 8-9). Pavlock objects that (1) the magistrate judge failed to review the record; (2) the Court credited incredible testimony; and (3) the Court failed to establish a sufficient nexus (Dkt. No. 49 at 3-4). The record, however, establishes that application of the enhancement was appropriate, and that any argument to the contrary would have had no reasonable probability of success on appeal. See <u>Rangel</u>, 781 F.3d at 745.

U.S.S.G. § 3A1.1(b)(1) provides for a two-level enhancement "[i]f the defendant knew or should have known that a victim of the offense was a vulnerable victim." In analyzing the application of the enhancement, a court must undertake a two step inquiry. "First, a sentencing court must determine that a victim was unusually

vulnerable. Second, the court must then assess whether the defendant knew or should have known of such unusual vulnerability." United States v. Etoty, 679 F.3d 292, 294 (4th Cir. 2012) (quoting United States v. Llamas, 599 F.3d 381, 388 (4th Cir. 2010)).

A vulnerable victim is one who is both a victim of the offense of conviction and "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." U.S.S.G. § 3A1.1, Application Note 2. Importantly, a victim cannot be considered vulnerable simply by nature of her membership in a defined class. United States v. Elkins, 296 F. App'x 306, 308 (4th Cir. 2008) (unpublished decision) (citing United States v. Frank, 247 F.3d 1257, 1260 (11th Cir. 2001)). Rather, "[t]here must be some nexus between the victim's vulnerability and the crime's success." Id. (citing United States v. Hawes, 523 F.3d 245, 255 (3d Cir. 2008)). The defendant need not know the exact source or extent of the victim's vulnerability; he need only know that the vulnerability exists. Etoty, 679 F.3d at 296-97.

In Pavlock's case, the relevant victim was Edith Konchesky ("Ms. Konchesky"). At sentencing, the Court found as follows:

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION
[DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO
§ 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

> Ms. Konchesky began giving substantial amounts of money to Mr. Pavlock in 2005 when she was 76 years of age. Ms. Gratz testified at trial that in 2006, during the negotiations to purchase the limousine service, the defendant stated he believed Ms. Konchesky suffered from Alzheimer's disease and that he would get the money to pay for the limousine once he became Ms. Konchesky's power of attorney.

> Within the past year, and I'm taking that from 2010 to now, Ms. Konchesky was diagnosed with dementia and prior to that on March 20th of 2009, Brian Fox, the Case Agent, interviewed Lisa Swope who was the Trustee for the bankruptcy of Earl and Karen Swaney and Ms. Swope advised him that on one occasion the defendant brought Ms. Konchesky to her office and she appeared to be lost and not to understand why she was present or what was going on.

> Karen Hall, who was the Conservator for Ms. Konchesky, supported that observation by stating that Ms. Konchesky was not able to take care of affairs and []needed assistance from an outside party.

(Crim. No. 1:10cr7-1, Dkt. No. 497 at 256-57). At trial, the

following exchange took place between the Government and its

witness Trudy Gratz ("Mrs. Gratz"):

> Q.   [D]id Mr. Pavlock ever come to your house and talk to you about [the limousines] or business deals?

> A.   Yes.

> Q.   Do you recall any conversations Mr. Pavlock had with you about Edith Konchesky?

> A.   Yes.

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

Q.  Could you please describe what Mr. Pavlock said at that time?

A.  Well he had come to my house one day and we were discussing the sale of the limousines and the fact that we needed paid and he had stated that Edith was getting Alzheimer's and that he was going to get a power of attorney on her or possibly that he already had one and that we would be able to get our money soon for that.

Q.  Did he explain why you'd be able to get your money soon?

A.  Because he was going to be able to have the power of attorney with Edith and that's where the money would come from.

(Crim. No. 1:10cr7-1, Dkt. No. 350 at 128-29).

Mrs. Gratz's testimony, in conjunction with the Court's findings, satisfied the two critical requirements for application of the "vulnerable victim" enhancement, that is, that Ms. Konchesky was unusually vulnerable due to her age and mental condition, and that Pavlock knew of her vulnerability. See Etoty, 679 F.3d at 294.[4]

Pavlock does not dispute that Ms. Konchesky was elderly at the time of the offense and that she was diagnosed with dementia some

---

[4] No authority supports Pavlock's argument that the Court had to find that he knew specifically of Ms. Konchesky's onset of dementia, or that Ms. Konchesky actually had dementia during the events in question (Dkt. No. 49 at 3).

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

time after the grand jury indicted him. Although Pavlock disputes Mrs. Gratz's credibility (Dkt. No. 49 at 3), there is no clear error in the Court's finding that her testimony was "particularly probative" (Crim. No. 1:10cr7-1, Dkt. No. 497 at 258). <u>McKenzie-Gude</u>, 671 F.3d at 463. Her testimony established that, as early as 2006, Pavlock was aware of Ms. Konchesky's deteriorating mental condition and had expressed his intent to others to use her condition to further his fraudulent activities. In sum, Pavlock's knowledge of Ms. Konchesky's vulnerability, and his expressed intent to exploit it established the requisite nexus to the crime's success. <u>Elkins</u>, 296 F. App'x at 308.

Any argument that the Court improperly applied the enhancement under U.S.S.G. § 3A1.1(b)(1) had no reasonable probability of success on appeal. Therefore, Pavlock was not prejudiced within the meaning of <u>Strickland</u>, and his claim for ineffective assistance of counsel on this ground fails.

<h3 style="text-align:center"><u>V. CONCLUSION</u></h3>

In conclusion, for the reasons discussed, the Court:

1.  **ADOPTS** the R&R (Dkt. No. 40);

2.  **OVERRULES** Pavlock's objections (Dkt. Nos. 48; 49);

3.  **DENIES** Pavlock's § 2255 Petition (Dkt. No. 1); and

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

4. **ORDERS** that this case be **DISMISSED WITH PREJUDICE** and **STRICKEN** from the docket of this Court.

It is so **ORDERED**.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in such a case. If the court denies the certificate, "a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." 28 U.S.C. foll. § 2255(a).

The Court finds it inappropriate to issue a certificate of appealability in this matter because Pavlock has not made a "substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong, and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003). Upon review of the record,

**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [DKT. NO. 40], DENYING PETITION FOR HABEAS CORPUS PURSUANT TO § 2255 [DKT. NO. 1], AND DENYING CERTIFICATE OF APPEALABILITY**

the Court concludes that Pavlock has failed to make the requisite

showing, and **DENIES** a certificate of appealability.

The Court **DIRECTS** the Clerk to transmit copies of this Order

to counsel of record and the <u>pro se</u> petitioner, certified mail,

return receipt requested, to enter a separate judgment order, and

to remove this case from the Court's active docket.

DATED:     April 14, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE
